

**Dated: March 12th, 2021**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## IN HUNTINGTON

| IN RE: | CASE NO. 3:10-bk-30836 |
|---|---|
| AERO-FAB, INC., | CHAPTER 11 |
| Debtor. | JUDGE B. MCKAY MIGNAULT |

## MEMORANDUM OPINION AND ORDER

Pending are two motions: (1) the Motion to Reopen Case ("Motion to Reopen") filed by AFI, LLC ("AFI") and Jeffrey Scott Maynard ("Jeff Maynard") [dckt. 233]; and (2) the Motion to Enforce Corrected Amended Order Approving Sale of Assets ("Motion to Enforce") filed by Jeff Maynard [dckt. 244].  The United States Trustee ("UST") and the movants in the Motion to Reopen have engaged in much motion practice, with each filing a Response/Reply and supplements to those filings.

The Motion to Reopen came before the Court for hearing on August 28, 2020, at which time the Court requested further, more in-depth briefing on the issues, specifically addressing potential tension with the Tax Anti-Injunction Act.  The Motion to Enforce came before the Court for hearing on October 21, 2020, at which time the Court took both motions under advisement.

All briefing having been received, the matters are ripe for adjudication.

I.

A. **Procedural and Factual History**

The Debtor, Aero-Fab, Inc., ("Aero-Fab") filed a Small Business Chapter 11 Petition on October 8, 2010. Aero-Fab's owner was Ronald Maynard. Instead of confirming a Chapter 11 Plan of Reorganization, Aero-Fab used the Chapter 11 process to sell all its assets.

One of the above-referenced sales was to AFI. Aero-Fab agreed to sell both real and personal property to AFI. The final sale order [dckt. 213], was entered on December 4, 2013, and it acknowledged the insider status of the purchaser; the owner of AFI, Jeff Maynard, was the son of Aero-Fab's owner. The property sold was subject to two liens: the first in favor of First Sentry Bank ($215,000) and the second in favor of the Internal Revenue Service ("IRS") ($256,042). The sale proceeds were to first be distributed to First Sentry Bank, then to CPA Jeff Porter to satisfy his administrative claim, then the balance to the IRS. According to the sale order, AFI took title to the assets free and clear of liens pursuant to 11 U.S.C. § 360(f). Furthermore, the sale was to be exempt from transfer tax by virtue of 11 U.S.C. § 1146.

According to the Report of Sale [dckt. 217] filed on January 7, 2014, AFI paid consideration for the assets in the amount of $400,000. Aero-Fab retained the net sum of $159,462 following the payoff to First Sentry Bank, payment to Aero-Fab's accountant, and a holdback for UST quarterly fees. Aero-Fab moved to dismiss its case on January 31, 2014, because there were no further assets to administer. The Court granted the motion and subsequently closed the case on June 4, 2014.

On August 3, 2020, AFI and Jeff Maynard (together, the "Reopen Movants") filed the Motion to Reopen. The Reopen Movants allege that the IRS "sandbagged" them by assessing a Trust Fund Recovery Penalty for unpaid, post-petition taxes owed by Aero-Fab just after closing

of the sale. Specifically, on February 28, 2014, the IRS assessed the penalty and subsequently asserted a lien against Jeff Maynard.

Jeff Maynard asserts that he has exhausted his administrative remedies against the IRS and now asks this Court to exercise its jurisdiction to reopen the case, "enforce" the final sale order entered in 2014, and order the IRS to "appear and justify its position before the Court."

### B. Arguments of the Parties

The Reopen Movants' arguments are largely the same in both motions, so the Court need only discuss them once. To provide context to the parties' contentions, the basis of the IRS's assessment against Jeff Maynard is 26 U.S.C. § 6672, which states that,

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for any pay over such tax, or willfully attempts in any matter to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). An individual may be liable under § 6672 only if "(1) he is a 'responsible person' under a duty to collect, account for, and pay over trust fund taxes," and "(2) he willfully fails to discharge his duties as a responsible person." *Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir. 1992) (citing *Slodov v. United States*, 436 U.S. 238, 246 n.7 (1978)).

The Reopen Movants assert that the trust fund tax assessment against Jeff Maynard is inappropriate and that the IRS should not be allowed to collect the trust fund tax. They rely on the following language in the final sale order: (1) that the Court will "retain jurisdiction of this transaction for the purposes of enforcing provisions of this order and the amended purchase agreement"; (2) that the "sale of property shall be free and clear of liens, claims, encumbrances,

and interests with the liens to attach to the proceeds"; (3) that AFI took "title to and possession of the assets free and clear of any and all liens, claims, liabilities, interests, and encumbrances"; and (4) "all persons and entities are hereby prohibited and enjoined from taking action that would adversely affect [or] interfere with the ability of the Debtor to sell and transfer the assets." This language forms the basis of the Reopen Movants' claim that the IRS has "blatantly disregarded" the terms of the final sale order by assessing the trust fund tax against Jeff Maynard. The Reopen Movants assert that Jeff Maynard was indeed a purchaser (in addition to AFI), not a "responsible person," and, thus, the IRS cannot assess this penalty against him. The majority of the Reopen Movants' arguments address the legality of the trust fund tax assessed against Jeff Maynard and mostly address whether he has been improperly deemed a "responsible person." They go so far as to file and discuss the transcript of the 2013 hearing approving the final sale order and point to sections they believe would absolve Jeff Maynard from the trust fund obligation.

Furthermore, the Reopen Movants assert that the Anti-Injunction Act does not apply to this matter because they are asking the Court to enforce its prior order (the final sale order), not enjoin the IRS from collecting a tax. The Reopen Movants frame the legal question herein as "whether the Bankruptcy Court has authority to enforce the terms of the agreement with the IRS." The Reopen Movants contend that this Court's previous decision in the *Thaxton* case supports these assertions.[1]

The IRS argues that the Anti-Injunction Act prevents this Court from even reopening the case to adjudicate the issues. It asserts that the Court lacks jurisdiction because the motions pending before it are simply attempts at preventing the assessment and collection of tax liabilities. The IRS also points out that the correct channel for Jeff Maynard's relief is an action for a refund

---

[1] The Court will address the *Thaxton* decision later in this opinion.

in the District Court or Court of Federal Claims and not the instant venue. Going into further detail on the merits of the disagreement, the IRS contends that Jeff Maynard was not a purchaser of Aero-Fab's assets. It argues that he is a "responsible person" under applicable law and can therefore be held liable for employment tax liabilities assessed against him personally under the Tax Code.

## II.

### A. Governing Authority

a. <u>Reopening a Case</u>

Reopening a bankruptcy case is made possible by 11 U.S.C. § 350(b), which states that "[a] case may be reopened in the court in which such case was closed to . . . accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Reopening is also governed by Federal Rule of Bankruptcy Procedure 5010, which permits a case to be reopened "on motion of the debtor or another party in interest." Fed. R. Bank. P. 5010. The term "party in interest" has been defined in the Code as "the debtor, the trustee, a creditor's committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." 11 U.S.C. § 1109(b). The Fourth Circuit considers a "party in interest" to be anyone "whose pecuniary interests are directly affected by the bankruptcy proceedings." *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchison)*, 5 F.3d 750, 756 (4th Cir. 1993).

The party seeking to reopen the case has the burden of proof. *In re Lee*, 356 B.R. 177, 180 (Bankr. N.D. W. Va. 2006). The Fourth Circuit has instructed courts to take a discretionary approach which allows consideration of "the totality of the circumstances in each case." *In re Rollison*, 579 B.R. 67, 70 (Bankr. W.D. Va. 2018); *see also Hawkins v. Landmark Finance Co. (In re Hawkins)*, 727 F.2d 324, 326 (4th Cir. 1984). With respect to the action of reopening, "a

bankruptcy judge, far from a mechanistic referee, is a guardian of the bankruptcy process and should take into consideration the equitable factors present . . . ." *Steel of West Virginia, Inc. v. McMellon (In re McMellon)*, 448 B.R. 887, 894 (S.D. W. Va. 2011).

"[B]efore reopening a case, the court should make the threshold determination that one of the three grounds articulated in § 350(b) exists." *Lee*, 356 B.R. at 180. Section 350(b) states that a case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C, § 350(b). Courts in the Fourth Circuit have held that cases should be reopened "only upon a showing of compelling circumstances." *Rollison*, 579 B.R. at 70 (*quoting In re Mutts*, 131 B.R. 306, 307 (Bankr. E.D. Va. 1991)) (internal quotation marks omitted). As far as timing goes, "[t]he longer the time between the closing of the estate and the motion to reopen, . . . the more compelling the reason for reopening an estate or proceeding should be." *Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014 (5th Cir. 1991) (citing *Reid v. Richardson*, 304 F.2d 351 (4th Cir. 1962)).

Importantly, "a court should not reopen a case where it appears that to do so would be futile and a waste of judicial resources." *Rollison*, 579 B.R. at 70-71 (*quoting In re Carberry*, 186 B.R. 401, 402 (Bankr. E.D. Va. 1995)) (internal quotation marks omitted); *see also Thompson v. Commonwealth of Virginia (In re Thompson)*, 16 F.3d 576, 581-82 (4th Cir. 1994) *cert. den*. 512 U.S. 1221, 114 S.Ct. 2709, 129 L.Ed.2d 836 (1994); *In re Hardy*, 209 B.R. 371, 379 (Bankr. E.D. Va. 1997) ("[A] Court will invoke its discretion and deny the reopening of a bankruptcy case 'where it appears that to do so would be futile and a waste of judicial resources.'") (quoting *Carberry*, 186 B.R. at 402). The "availability of relief in an alternative forum is a permissible factor on which to base a decision not to reopen a closed bankruptcy case." *In re Skyline Woods Country Club, LLC*, 431 B.R. 830, 835 (8th Cir. B.A.P. 2010). The Third Circuit ruled, when

asked to reopen a case to resolve a dispute regarding a settlement agreement it had approved, that "the Bankruptcy Court [] was 'well suited to provide the best interpretation of its own order,'" and that it had jurisdiction to reopen the case. *In re Lazy Days' RV Center, Inc.*, 724 F.3d 418, 423 (3rd Cir. 2013).

In the instant case, the Debtor has not requested that the case be reopened, nor are there any assets to administer. Therefore, the only portion of § 350(b) that applies is the "for other cause" provision. The first step in the analysis will be determining whether the Reopen Movants have established cause to reopen the case and whether reopening the case would be futile and a waste of judicial resources.

    b.   The Anti-Injunction Act

The Anti-Injunction Act (the "AIA") prohibits lawsuits "for the purpose of restraining the assessment or collection of any tax . . .", subject to certain exceptions. 26 U.S.C. § 7421(a). Furthermore, "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed . . . until a claim for refund or credit has been duly filed with the Secretary . . . ." 11 U.S.C. § 7422(a). Courts may "entertain suits challenging a collection of a tax after such collection has occurred", but the "Internal Revenue Code forecloses federal courts from hearing cases which seek to restrain tax collection . . . ." *Retfalvi v. Commissioner of Internal Revenue Service*, 216 F. Supp. 3d 648, 652 (E.D.N.C. 2016) (citing *Alexander v. Ams. United Inc.*, 416 U.S. 752, 759-60 (1974)). The AIA reflects the desire to "protect[] [] the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference . . . ." *Bob Jones University v. Simon*, 416 U.S. 725, 736 (1974). Importantly, "the effect of the Act is simple and

obvious: courts lack jurisdiction to issue injunctive relief in suits seeking to restrain the assessment or collection of taxes." *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 405 (4th Cir. 2003).

The Ninth Circuit addressed the argument that 11 U.S.C. § 105(a) provides bankruptcy courts the power to override the AIA in *American Bicycle Ass'n v. United States (In re American Bicycle Ass'n)*. The court stated that "the text of the Anti-Injunction Act is specific and unequivocal. We hold that its proscription is not overridden by the general grant of authority provided in section 105(a) of the Bankruptcy Code." *American Bicycle Ass'n v. United States (In re American Bicycle Ass'n)*, 895 F.2d 1277, 1279-80 (9th Cir. 1990). The Fourth Circuit has noted that "[t]here is no express provision in the Bankruptcy Code indicating Congressional intent that the Code supersede the Anti-Injunction Act." *Clark v. United States (In re Heritage Village Church and Missionary Fellowship)*, 851 F.2d 104, 105 (4th Cir. 1988).

The Supreme Court has articulated two exceptions to the AIA. The first exception, created in *Enochs v. Williams Packaging & Navigation Co.*, allows injunctive actions against the IRS to proceed only if the plaintiff could prove two elements: (1) that under no circumstances would the Government ultimately prevail; and (2) that equity jurisdiction exists otherwise. *Enochs v. Williams Packaging & Navigation Co.*, 370 U.S. 1 (1962). For the first element, "a court must determine, on the basis of the information available to the government at the time of the suit, whether, under the most liberal view of the law and the facts, the United States cannot establish its claim." *Judicial Watch*, 317 F.3d at 407 (citing *Enochs*, 370 U.S. at 7) (internal quotation marks omitted).

The second exception was created in *South Carolina v. Regan*, wherein the Supreme Court opined that the AIA "could not stand as a barrier to injunctive relief in situations where . . . Congress has not provided the plaintiff with an alternative legal way to challenge the validity of

the tax." *Judicial Watch*, 317 F.3d at 407-08 (quoting *South Carolina v. Regan*, 465 U.S. 367, 373 (1984)) (internal quotation marks omitted). The issue in the *Regan* case was the constitutionality of state-issued bonds. *Judicial Watch*, 317 F.3d at 407. The basis for the exception "is *not* whether a plaintiff has access to a legal remedy for the precise harm that it has allegedly suffered, but whether the plaintiff has any access at all to judicial review." *Id.* at 408 (citing *Regan*, 465 U.S. at 381) (emphasis in the original). "For most aggrieved persons, Congress has provided an alternative avenue to relief: a refund suit under 26 U.S.C. § 7422." *McKenzie-El v. Internal Revenue Service*, No. ELH-19-1956, 2020 WL 902546, at *8 (D. Md. Feb. 24, 2020); *see also Regan*, 465 U.S. at 374-82. For example, the Seventh Circuit noted that the *Regan* exception did not apply in the matter before it because, should the party contesting the assessed tax want to challenge the tax, it could merely pay the tax and sue for a refund. *LaSalle Rolling Mills, Inc. v. United States (In re LaSalle Rolling Mills, Inc.)*, 832 F.2d 390, 393 (7th Cir. 1987).

These exceptions are narrow, so as to prevent a "flood of lawsuits brought against the IRS . . . creating precisely the kind of judicial interference with the assessment and collection of taxes that the Act was designed to prevent." *Judicial Watch*, 317 F.3d at 408.

**B. Analysis**

This Court's threshold question is whether the case should be reopened in the first place. It is well established that bankruptcy courts have great discretion in deciding whether to reopen bankruptcy cases. They are instructed by caselaw to decide the matter based on the specific facts before it. In following that directive, this Court shall look to the specifics of this matter and distill the information presented herein down to the most pertinent facts.

This Court is of the opinion that, under the guise of a motion to compel, the Reopen Movants are asking this Court to enjoin the IRS from collecting a tax it has assessed, as nothing in

the record indicates that Jeff Maynard has attempted to sue the IRS for a refund. It is important to look to the relief sought and its practical effect. Here, this Court is being asked to find that the IRS improperly assessed the trust fund obligation, and the only practical effect of a decision in the Reopen Movants' favor would be to prevent the IRS from collecting the tax. *In re J.J. Re-Bar Corp., Inc.*, 644 F.3d 952, 956 (9th Cir. 2011) ("The relief sought . . . would effectively preclude the IRS's collection of a § 6672 assessment, and thus falls squarely within the reach of the Anti-Injunction Act . . . ."). The Court agrees with the IRS's position that Jeff Maynard is "trying to escape his own personal and distinct liability under 26 U.S.C. § 6672 . . . .".

The Reopen Movants' attempts at categorizing this action as an effort to enforce a settlement obligation fail. Just because a bankruptcy court has the authority to interpret its own orders does not mean it has jurisdiction over the specific issues in controversy. While this Court agrees that it is in the best possible position to interpret and enforce its own decisions, it cannot ignore the clear and specific directives contained in the AIA. This Court lacks the jurisdiction to issue injunctive relief in cases such as this, and, therefore, it cannot absolve Jeff Maynard of his liabilities to the IRS. This is exactly the situation for which the AIA was devised – to prevent judicial interference with the assessment and collection of taxes.

Furthermore, neither of the exceptions to the AIA apply here. Under the *Enochs* test, this Court would be required to find that the IRS would, under no circumstances, prevail on its claim. In reading the substance of the arguments for and against the legality of the trust fund obligation, it is clear that the IRS has, at the very least, a slim chance of prevailing. The *Enochs* exception is therefore inapplicable here. The *Regan* test applies in situations where the entity seeking relief has no alternative legal way to challenge the validity of the tax. Here, Jeff Maynard is able to take

proper recourse by suing the IRS for a refund of the tax, and thus has an alternative legal method to challenge the trust fund obligation.

The Reopen Movants point to this Court's predecessor judicial officer's decision in *In re Thaxton* as applicable to the situation herein. *In re Thaxton*, No. 2:09-bk-20649, 2017 WL 2371121 (Bankr. S.D. W. Va. May 30, 2017). *Thaxton*, inasmuch as it is an unpublished decision and is therefore not binding on this Court, is easily distinguished from the instant matter. The *Thaxton* decision tackled the question of whether the Debtors were liable for post-petition interest that had accrued on an obligation to the IRS as opposed to the validity of the initial assessment of the trust fund tax. Because the Court's determination relied on provisions of the Bankruptcy Code and did not touch the issue of the underlying trust fund tax itself, the AIA was not implicated.

The reopening of this case would be a textbook example of futility and the wasting of judicial resources. Even if this case could be reopened "for other cause", this Court would have no jurisdiction over the underlying issues, because it is prevented from hearing the merits of the trust fund obligation due to the applicability of the AIA.

### III.

To reopen a bankruptcy case, a court must find that there is a reason for reopening under § 350(b) and that reopening the case would not be futile and a waste of judicial resources. The AIA unequivocally applies to the underlying conflict in this case, and, therefore, this Court lacks the jurisdiction to decide whether Jeff Maynard is properly liable for the trust fund obligation assessed by the IRS. It would be futile to reopen the case simply to decide that I have no jurisdiction to accord relief to any party in the matter. Accordingly,

11

**IT IS ORDERED** that the Motion to Reopen be, and is hereby, **DENIED.**

**IT IS FURTHER ORDERED** that the Motion to Enforce be, and is hereby, **DENIED AS MOOT.**